IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

ALICE RUSH                                                                                          PLAINTIFF

VS.                              CIVIL ACTION NO. 4:11cv180-CWR-FKB

MICHAEL J. ASTRUE, COMMISSIONER                              DEFENDANT
SOCIAL SECURITY ADMINISTRATION

_____

REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE

      This cause is before the undersigned United States Magistrate Judge for a Report and Recommendation regarding the appeal by Alice Rush of the Commissioner of Social Security's final decision denying Rush's application for Supplemental Security Income (SSI). In rendering this recommendation regarding Rush's appeal, the Court has carefully reviewed the administrative record regarding Rush's claims (including the administrative decision, the medical records and a transcript of the hearing before the Administrative Law Judge ("ALJ")); Plaintiff's Motion for Summary Judgment and accompanying brief; Defendant's Motion to Affirm the Decision of the Commissioner and accompanying brief; and Plaintiff's reply brief. For the reasons discussed in this Report and Recommendation, the undersigned recommends that Plaintiff's Motion for Summary Judgment (Docket No. 14) be denied, and that Defendant's Motion to Affirm the Decision (Docket No. 16) be granted.

I. FACTS

A. Procedural History

      Rush was born on October 7, 1971, and was thirty-nine years of age on the date of the ALJ's decision on February 3, 2011 (Docket No. 11-5 at 2). She applied for SSI on November 14, 2008 (Docket No. 11-5 at 3). Plaintiff alleges that she is disabled because of mental

retardation, depression, anxiety, swelling of her left knee, back pain, gastric reflux, and high blood pressure. In the past, she has worked as a fast food cook, machine washer (laundry attendant), housekeeper cleaner, hand packager, and poultry eviscerator (Docket No. 11-2 at 58). Plaintiff has an 11th grade education, and she was pursuing a GED at the time of the hearing (Docket No. 11-2 at 36).

Plaintiff's applications were denied initially and upon reconsideration. She requested an administrative hearing, which was held on September 1, 2010 (Docket No. 11-2 at 28). Thereafter, the ALJ issued a decision finding that Plaintiff was not disabled at any time from November 14, 2008, her alleged onset date, through the date of his decision, February 3, 2011. The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Docket No. 11-2 at 2), and, after briefing in this Court, this matter is ripe for review. Plaintiff has been represented by counsel throughout the administrative process and before this Court.

## B. Hearing Decision

In his decision, the ALJ found that Plaintiff has the severe impairments of meniscus tear (status post surgery) of the left knee, high blood pressure, obesity, and mild mental retardation (20 C.F.R. § 416.920(c)), and the non-severe impairments of depression and anxiety (Docket No. 11-2 at 13). However, the ALJ concluded that Rush does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

With regard to mental impairments, the ALJ determined that Rush's mental impairments of depressive disorder and anxiety disorder do not, when considered singly or in combination, meet or medically equal the listings of section 12.04 and 12.05. To reach this decision, the ALJ

considered Plaintiff's treatment records from Weems Community Mental Health Center from various therapists and a nurse practitioner (Susan Bobo, APMH-NP), a consultative examiner (Jan Boggs, Ph.D.), a state agency medical consultant (Linda Baker, Ph.D.), her reported activities of daily living and social functioning, and other evidence in the record. The ALJ found that although the claimant was not entirely credible, she had moderate difficulties with concentration, persistence, or pace, which were attributable to mild mental retardation, not depression and anxiety. The ALJ noted that Rush has not experienced any episodes of decompensation, which have been of extended duration, therefore she did not meet the criteria of paragraph B of listing 12.04 and paragraph D of listing 12.05. The ALJ also concluded that Rush did not meet the criteria for paragraphs A, B, or C of listing 12.05. He also he discounted an IQ test by an unidentified examiner dating back to 1997 and noted that Dr. Boggs found that Rush was malingering during his examination of Rush. Docket No. 11-2 at 16 - 17.

Considering these conditions, and after an extensive discussion of the medical records, the ALJ concluded that Rush has the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 416.967(c), except limited by mild mental retardation. Docket No. 11-2 at 18 - 22. Therefore, the ALJ found that Rush is capable of performing her past relevant work as a housekeeping cleaner, hand packer, and poultry eviscerator. Thus, the ALJ concluded that Plaintiff was not disabled, as defined by the Social Security Act, from November 14, 2008, through February 3, 2011, the date of the decision.

## C. Medical History

The undersigned has reviewed the medical records, as well as the detailed medical record summaries as set forth in the parties' filings, and has determined that a detailed recitation of the

records is not necessary in this Report and Recommendation.

## II. STANDARD OF REVIEW

The undersigned recognizes that this Court's review is limited to an inquiry into whether there is substantial evidence to support the Commissioner's findings, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971), and whether the correct legal standards were applied. 42 U.S.C. § 405(g); Falco v. Shalala, 27 F.3d 160, 163 (5th Cir. 1994); Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). The Fifth Circuit has defined the "substantial evidence" standard as follows:

> [s]ubstantial evidence means more than a scintilla, less than a preponderance, and is:
>> such relevant evidence as a reasonable mind might accept to support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but "no substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence."

Abshire v. Bowen, 848 F.2d 638, 640 (5th Cir. 1988 )(quoting Hames v. Heckler, 707 F.2d 162, 164 (5th Cir. 1983)(citations omitted)). Put another way, substantial evidence is "such evidence that a reasonable mind might accept as adequate to support the decision." Stone v. Astrue, 2010 WL 2164414 (N.D. Tex. May 27, 2010)(citing Richardson, 402 U.S. at 401). In applying the substantial evidence standard, the court must carefully examine the entire record but must refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995). Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve. Martinez v. Chater, 64 F.3d 172, 174 (5th Cir. 1995). Hence, if the Commissioner's decision is supported by the evidence, and the proper legal standards were applied, the decision is conclusive and must be

upheld by this court. Paul v. Shalala, 29 F.3d 208, 210 (5th Cir. 1994), overruled on other grounds, Sims v. Apfel, 530 U.S. 103, 120 S.Ct. 2080, 147 L. Ed. 2d 80 (2000).

## III. DISCUSSION OF THE ALLEGED ERRORS
## AND APPLICABLE LAW

The Plaintiff argues that the ALJ's decision is not supported by substantial evidence and should be reversed on three bases, quoted as follows:

1. The Commissioner applied an improper legal standard to evaluate Plaintiff's severe impairments;

2. The Commissioner failed to properly evaluate medical opinion evidence; and

3. The ALJ failed to properly consider Plaintiff's functional limitations in determining RFC.

In response, the Commissioner argues that substantial evidence supports the ALJ's decision that Plaintiff is not disabled, that the ALJ properly concluded that Plaintiff did not meet Listing 12.05(c), that the ALJ properly evaluated Plaintiff's RFC, and that vocational expert testimony established that Plaintiff can perform her past relevant work given her RFC.

Once again, the standard of review for this court is clear. The ALJ's decision on disability must be upheld if it is supported by substantial evidence. The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who had an opportunity to observe whether he or she seemed to be disabled. Harrell v. Bowen, 862 F.2d 471, 480 (5th Cir. 1988). When the record contains substantial evidence to support the ALJ's decision, the Court must give considerable deference to the ALJ's evaluation of the plaintiff's credibility and severity of limitations. Wren v. Sullivan, 925 F.2d 123, 128 (5th Cir. 1991).

### A. Whether the Commissioner applied an improper legal standard to evaluate Plaintiff's severe impairments.

A review of the decision and the medical evidence shows that substantial evidence supports the ALJ's conclusion that Plaintiff is not disabled within the meaning of the Social Security Act. The Plaintiff first argues that the ALJ applied an improper legal standard to evaluate Plaintiff's severe impairments by failing to apply the standard found in Stone v. Heckler, 752 F.2d 1099 (5th Cir. 1985), in a proper manner. Under the standard set forth in Stone and in the regulations, an impairment can be considered not severe only if it is a slight abnormality having such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. Id. at 1103. Stone states that unless the correct standard for the severity requirement is used, as evidenced by a reference to Stone or to the use of the Fifth Circuit's construction of § 404.1520(c), the claim must be remanded to the Secretary for reconsideration. Id. at 1106.

Turning to the ALJ's decision, the ALJ cited Stone in his analysis and thoroughly discussed the plaintiff's various alleged ailments and how they would affect her job performance. However, his nuanced definition of "non-severe" did not faithfully track the Stone definition. Nevertheless, as explained below, this does not provide a basis for remand.

Turning to her severe impairments, the ALJ found that her miniscus tear (status post surgery), high blood pressure, obesity, and mild mental retardation are severe impairments. The ALJ defined "severe" as an impairment that "is more than a slight abnormality and imposes more than a minimal limitation on physical or mental ability to engage in basic work activities," thus tracking the language of Stone. Docket No. 11-2 at 13.

Turning to her other impairments, the ALJ determined that Rush's mental impairments of depressive disorder and anxiety disorder are "non-severe." The ALJ defined "non-severe" in at least three different places in the opinion. In the first definition, the ALJ states that an "impairment or combination of impairments is 'not severe' when medical and other evidence establish only a slight abnormality or combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work." Docket No. 11-2 at 12. In a second definition, the ALJ states that "the claimant's non-severe impairments are no more than slight abnormalities that cause [] than minimal limitations in her mental ability to engage in basic work activities." Docket No. 11-2 at 13. The Court interprets this definition as containing a typographical error which omitted words as part of the definition, as indicated by the brackets. In the third definition, the ALJ defined "non-severe" as impairments that "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities." Docket No. 11-2 at 14.

According to the standard set forth by the Fifth Circuit, an impairment can be considered not severe "only if it is a slight abnormality having such minimal effect on an individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." Loza v. Apfel, 219 F.3d 378, 392 (5th Cir. 2000). By the plain language the Fifth Circuit employed in Loza, a condition that has "no more than a minimal" effect on the ability to work, as stated by the ALJ in the instant case, is not equivalent to an impairment that "would not be expected to interfere with the individual's ability to work." Although this was only one component of the ALJ's evaluation, he employed the wrong legal standard on this issue.

However, the ALJ's analysis on this issue does not provide cause for remand. Fifth Circuit cases post-dating Stone have found that when an ALJ acknowledges a significant impairment while failing to find it "severe," and the ALJ finds that the claimant can return to her past work at the fourth step of the sequential evaluation analysis, a finding of non-disabled should be upheld. See Adams v. Bowen, 833 F.2d 509, 512 (5th Cir. 1987); see also Chaparro v. Bowen, 815 F.2d 1008, 1011 (5th Cir. 1987)(noting that whether a claimant could return to his past relevant work was an inquiry unaffected by the test set forth in Stone). In Jones v. Bowen, the Fifth Circuit upheld a denial of benefits at the fourth and fifth levels of the sequential evaluation analysis despite a Stone error at the second level because it would not constitute an error similar to that found in Stone. 829 F.2d 524, 526 n. 1 (5th Cir. 1987). In yet another case, the Fifth Circuit rejected a claimant's argument that the ALJ cited the improper severity standard when the ALJ's disability determination was not made at step two of the sequential evaluation analysis. Shipley v. Secretary of Health & Human Services, 812 F.2d 934, 935 (5th Cir. 1987).

District courts in Texas have recently also upheld denials of Social Security benefits when the ALJs employed a less than faithful construction of the Stone severity standard. See Jones v. Astrue, 851 F. Supp. 2d 1010, 1018 (N.D. Tex. 2012)(collecting cases from Texas and Louisiana district courts); Stone v. Astrue, 2010 WL 2164414 (N.D. Tex. May 27, 2010). In Jones, the Court found that post-Stone decisions of the Fifth Circuit:

> convey the message that the Stone 'remand' directive did not do away with the Fifth Circuit's harmless-error policy, and that a remand is not required merely because an administrative law judge committed a Stone error – that is, if the administrative law judge makes his decision of nondisability at a step subsequent to step two, an error in the form of a failure of the administrative law judge to apply the Stone severity standard at step two will not, standing alone, be ground for reversal and remand.

Jones, 861 F. Supp. 2d at 1018.

Likewise, in this case, the ALJ's application of Stone to find that Rush's mental impairments were non-severe is harmless error. Admittedly, the ALJ employed a less stringent standard than Stone at step two of the sequential evaluation analysis. Nevertheless, the ALJ concluded at steps four and five that, despite her alleged mental impairments, she could return to her past work. As directed by the foregoing authorities, the ALJ's error was harmless, and this does not provide a basis for remand.

In addition, the government argues that substantial evidence supports the ALJ's finding that Plaintiff's depression and anxiety do not, when considered singly or in combination, meet or medically equal the listings of section 12.04 and 12.05. The undersigned agrees. "For a claimant to show that her impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). The ALJ quite simply reviewed the medical evidence and compared the medical evidence to the criteria found in Listings 12.04 and 12.05. The ALJ found that Rush had mild limitations in activities of daily living, mild difficulties in social functioning, moderate difficulties in concentration, persistence or pace, and no episodes of decompensation. The listing requires "marked" restrictions and difficulties in these areas, or "repeated episodes of decompensation, each of extended duration." 20 C.F.R. § III, Pt. 404, Subpart P, App. 1, Listings 12.04(B) and 12.05(D). Thus, when considering the evidence of record, the Plaintiff did not meet the criteria. Thus, substantial evidence supports the ALJ's conclusion that Rush did not meet Listing 12.04 and 12.05.

B.  Whether the Commissioner failed to properly evaluate medical opinion evidence.

Plaintiff next argues that the ALJ failed to evaluate medical opinion evidence properly. Plaintiff argues that the ALJ committed error when he gave Dr. Soriano's opinion "little weight," found that the treating nurse practitioner was not an "acceptable medical source," and gave more weight to the opinions of examining and consultative physicians.

In his "Medical Opinion Re: Ability to Do Work-Related Activities (Physical)," treating physician Dr. Soriano found that Rush can lift and carry 20 pounds occasionally and less than 10 pounds frequently; can stand and walk less than 2 hours in an 8 hour day, and can sit less than 2 hours in an 8 hour day.  Docket No. 11-11 at 69 - 73.  Dr. Soriano stated that Plaintiff needs the opportunity to shift positions at will, and that she has certain postural, environmental, and physical function limitations.  Id.  The doctor even stated that Rush's impairments and treatments would cause her to be absent from work more than 3 times per month.  Id.  The ALJ gave a detailed summary of the medical records from Rush's treating physician, Dr. Soriano. Docket No. 11-2 at 18 - 21.  However, the ALJ afforded "little weight" to Dr. Soriano's opinion evidence regarding her physical ability to do work-related activities because it was "conclusory, providing very little explanation of the evidence relied on in forming that opinion."  Docket No. 11-2 at 21.

The ALJ afforded "no weight" to the findings and opinions of nurse practitioner Bobo because, according to the ALJ's written opinion, a nurse practitioner does not qualify as an acceptable medical source under the regulations.  Docket No. 11-2 at 15.  Nurse practitioner Bobo diagnosed Plaintiff with major depressive disorder in remission and antisocial personality disorder, rule out borderline intellectual functioning.  Id.  According to the ALJ's opinion,

acceptable medical sources, as found in 20 C.F.R. § 404.1513 and 416.913(a) include licensed physicians or osteopathic doctors, licensed or certified psychologists, licensed optometrists (for visual disorders), licensed podiatrists (for foot and ankle impairments only), and qualified speech pathologists (for speech and language impairments only). Id.

The Fifth Circuit has held that "ordinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985). However, the treating physician's opinions are far from conclusive because the ALJ has the sole responsibility for determining disability status. Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir.1994). "Accordingly, when good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony. The good cause exceptions [the court] has recognized include disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." Id. In other words, the ALJ "'is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly.'" Id. (quoting Scott v. Heckler, 770 F.2d at 485). Furthermore, the opinion of a specialist is generally accorded greater weight than that of a non-specialist. Paul v. Shalala, 29 F.3d 208, 210 (5th Cir. 1994). A review of the ALJ's decision shows that there is substantial evidence supporting his decision to accord little or no weight to the opinions of Dr. Soriano and Nurse practitioner Bobo and to give significant weight to other consultative and examining medical sources.

With regard to Dr. Soriano, the record simply does not support his opinion because there

is a lack of clinical findings supporting his opinion. Dr. Soriano's disability report forms show that his examination findings are normal, except when he diagnosed her with gastroesophageal reflux disease. Docket Nos. 11-7 at 34 and 11-10 at 25 and 31. MRIs and other radiographic studies showed no abnormalities in her spine and heart. <u>See</u>, <u>e.g.</u>, Docket Nos. 11-7 at 37, 11-9 at 10 - 11 and 36, and 11-11 at 23, 46, and 47. Physical therapy and other medical records show that she had recovered well from her left knee surgery, as she was discharged from physical therapy after reporting no pain in her knee and having met all physical therapy goals. Docket No. 11-10 at 22. As the government points out, the rest of Soriano's notes are "essentially unremarkable" and do not support his opinion that Rush cannot perform full-time work.

Turning to the ALJ's rejection of Nurse Practitioner Bobo's opinion, the regulations clearly outline what qualifies as an acceptable medical source, and a nurse practitioner is not among those listed. 20 C.F.R. § 416.913(a). Although a nurse practitioner falls under the category of "other sources" in § 416.913(d), the ALJ is not obligated to consider evidence offered by those sources. Even so, one of her assessments supports the finding of the ALJ in that she commented that Rush was responding well to Zoloft, and that her major depressive disorder was in remission. Docket No. 11-12 at 8.

As to the other examiners, a review of the records supports the ALJ's findings. As a matter of law, treating physicians are not entitled to greater weight in the deliberations of the ALJ than those of the consulting physicians. <u>Adams v. Bowen</u>, 833 F.2d 509, 512 (5th Cir. 1987). After reviewing the voluminous records in this action, the undersigned finds no basis to disturb the ALJ's conclusions on this issue and finds that substantial evidence exists to support the ALJ's decision.

### C. Whether the ALJ failed to properly consider Plaintiff's functional limitations in determining RFC.

The Plaintiff argues that because the ALJ never explained what, if any, functional limitations result from his finding that Plaintiff has "mild mental retardation," this does not constitute a proper RFC assessment. Plaintiff argues that with this error, the ALJ failed in his duty to provide a function-by-function assessment of Plaintiff's ability to engage in work-related activities. Plaintiff also asserts that even though he found that she has moderate limitation in concentration, persistence, and pace, he erred when he did not include these limitations in the hypothetical question posed to the vocational expert witness.

The Fifth Circuit has clearly stated when a defective hypothetical question will produce reversible error, as follows:

> Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant *recognized by the ALJ*, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question), a determination of non-disability based on such a defective question cannot stand.

Bowling v. Shalala, 36 F.3d 431, 436 (5th Cir. 1994)(emphasis added).

Contrary to Plaintiff's arguments, substantial evidence supports the ALJ's determination of RFC and his reliance upon vocational expert testimony. Taking into account Plaintiff's conditions, the ALJ posed comprehensive questions to the vocational expert during the hearing. The vocational expert reviewed Plaintiff's past relevant work and found that these jobs could be performed by someone with an IQ level in "retard range." Docket No. 11-2 at 59. The

undersigned finds that the hypothetical reasonably incorporated the disabilities of the claimant as recognized by the ALJ. Furthermore, Plaintiff's counsel posed to the vocational expert additional questions that obviously tracked physical work limitations proposed by Dr. Soriano. The Court finds no basis to disturb the ALJ's ruling. In sum, substantial evidence exists to support the ALJ's determination that Plaintiff, even when considering her impairments, could perform her past relevant work. Therefore, she is not disabled under the Social Security Act.

## IV. CONCLUSION

For the reasons discussed above, the undersigned finds that the ALJ correctly analyzed the applicable law, that substantial evidence supports this decision, and that no reversible error exists. Accordingly, the undersigned recommends that the Motion to Affirm the Commissioner's Decision be granted, and that Plaintiff's Motion for Summary Judgment be denied.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. §636; Fed. R. Civ. P. 72(b)(as amended, effective December 1, 2009); <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 4th day of March, 2013.

/s/ F. Keith Ball
UNITED STATES MAGISTRATE JUDGE